# 7546

No. 7546

Court of Appeal Parish of Orleans.

John Roehrig

—vs—

Maryland Casualty Company of Baltimore.

Dinkelspiel- J.—    This action is brought under the Workingmens Compensation Act of 1914 - 16, by the father, of John Roehrig, who alleges that his son Edward J. Roehrig, a young man of twenty-five years of age single and employed by the John H. Murphy Iron Works of this City as Boiler Maker and Helper, was so employed in the month of August 1918; that on the 24th. of August of the same year, between the hours of four and five o'clock in the afternoon whilst his son in due course of his employment was helping in reveting a Crystalizer Tank which was being constructed by the Murphy Iron Works was touched by an electric wire which was used at the time to furnish electric light and power to the workmen inside of said Crystalizer to whom he was a helper, and he as the wire touched him was shocked, electricuted and killed by the powerful and deadly electrical current with which the said wire was charged at the time; that he is a widower, old and infirm, and was entirely and absolu--tely dependant upon his said son for his daily wants and necessities of life; that at the date of the accident which caused the death of his said son, he was poor and without

413

means, and under the provisions of the Employers Liability Act of this State he is entitled to receive as compensation twenty-five per cent of the wages earned and paid to his deceased son by his employer at the date of the accident upon which day he was killed; said payments to be weekly from August 34th. 1918, and to continue from week to week for three hundred weeks. Further aleges, that as his son at the date of his death and prior thereto was earning nineteen dollars per week as wages which was paid to him by his employer that plaintiff is entitled to receive $5.32. per week, as a compensation due him from August 34th. 1918, for three hundred weeks and there is past. due him from that date to November 1918 the sum of $46.98.

The petition goes on further to state, that the Maryland Casualty Company of Baltimore, the defen- -dant, issued its policy of insurance to the said John H. Murphy Iron Works, the employer of the deceased son of plaintiff, by which the insurer agrees and binds himself itself to promptly pay compensation to the person who may be entitled thereto, and plaintiff has a right of action against the said insurer to enforce payment to him of the compensation past due him and to become due to him as above set forth. That having failed to agree upon his claim for the payment of the compensation which is due as a dependant upon his deceased son, hence he prays for judgment for the amount of his demands.

The Surety Company admits there is no ques- -tion of law involved in this case; that it is simply a suit for compensation under the acts as herein cited; that the act provides for injuries resulting in disability or death; that it does not dispute the status of the plaintiff nor the amount recoverable if the evidence jus- -tifies a judgment.

As in all such cases witnesses in their testimony differ and draw their own conclusions as to the result of accident or death as the case may be and this case presents the same difficulties on questions of fact as possibly nine tenths of similiar cases.

The father testifies, substantially , the death of his son, his employment with the Murphy Iron Work, that he was living with the fathers family and had been all the time during his entire life up to the time of his death which occurred as stated in the petition; that he was a healthy robust man, hard worker and the sole and only support of his father and family, that his mother was dead and two younger brothers living, never had been sick, was a big, strong healthy boy, he loaded irons and there was no better boy and he could throw anything. The cross examination produced no other facts.

The next witness was J. T. Henderson, who at the date this boy died was at work in the Murphy Iron Works, that this young man was sent to him by the foreman to assist him in driving rivets on the angle iron on the back of the Crystalizer- 7/8 rivets, the foreman was a Mr. Whitaker, and he was instructed to be sure to get the rivets up at the head, he so instructed the deceased, the heads had to be reamed and on account of reaming the hole it made holes a little kind of oblong and one side of the rivet did'nt come up so he instructed the boy twice about that. At this time he was sitting on the inside. There had been a boiler maker just ahead of him caulking and he had a light in there. This light fell down and he had a wire wrapped around there with a globe, just above the globe the wire was wrapped and the insulators were up, he had this hanging up in there, it dropped down and the globe bursted. He was on a board and there was a hole

in there, a big man hole that you go in, the board was
kept from slipping down, that is all I could do to hold
one of these big guns and I was holding the gun , the
rivet was not up and there was the 7/8 rivet in the
rear end of the Crystalizer, and so when he (the witness)
looked up he saw the deceased and he looked up at him,
and I laid my gun right in my lap. I was sitting right on
the board, had my feet under me on this board to keep
from slipping down, so I looked up and the deceased had
run his arm through the hole and signalled me to stop, a
and then I noticed as his arm struck the Crystalizer he
fell back. At the time of this happening his face was as
clear as any that I ever saw in a man; he looked at me as
if to say stop and wait x till I can drive the rivet and
then fell back dead.  He goes on to illustrate his state
of feelings at the time that this occurred and amongst
other things says; " the deceased must have gotten a
shock ", just as the witness did. He ran around to see
just what occurred and he found that the deceased was
standing in a hole of water; several of the men helped
the witness to pick up the deceased. He then related
what occurred at the time, amongst other things, that
they had gotten water, poured it on the deceased and
tried to make him drink some, but he was gone and they
carried him into the office of the company. He could not
drink the water and his attitude and his entire appear-
-ance was that of a corpse which he was. He describes
the boy in this manner; " He was a healthy guey, stout
boy; me and him was just talking, I talked to him two
or three times, he was as healthy as I ever saw anybody?
It seemed to me like there was nothing seemed to be the
trouble with him one way or t ther." He had been
working with this witness for s.     two hours, he had not

never

Complained of being sick; he had spoken to the deceased
three or four minutes before this accident occurred.
The Crystelizer was about twelve feet long, and he gave
him the instructions as heretofore stated.   He was of
a cheerful disposition, laughing and joking and everything
as nice as could be.

　　　　The cross examination of this witness did not
in any way, in our opinion, change any of the material
statements made on the direct examination.

　　　　The next witness was a man by the name of F. E.
Swan. He testified, that he was present and working at the
Murphy Iron Works on the 24th. of August 1918, when Edward
Roehrig was killed. He was on one side of the shop and the
deceased was on the other side; that he saw when they were
bringing him across the shop; he was a big healthy look-
-ing boy, very strong, he was as strong as any boy I ever
saw of his age and size; he seemed to be in perfect health.
He goes on in answer to questions, as follows:-

　　Q- Do you know anything about the electricity on that
　　day; the condition of the electric wires around the
　　Crystelizer ? A- No, Sir; not around the Crystelizer,
　　but I did get a shock that morning picking up the
　　generator. I had to move the generator where ever I
　　went, and I had to take that to a crane from one place
to another to weld, and that morning and several other
times I had a shock in picking up on the chain. The
chain/
chain would get to a certain place  and the pully in it
　　would shock me.

　　Q- Was it commonly known in the shop that the insula-
　　-tion was dead and that there would be a great many
　　crane/
　　pieces of machinery as well as your current charged
　　with electricity? -A- Yes, Sir.

　　Q- Do you know of any accident that occurred on the

417

Crystalizer on the Friday of the accident. Do you know Ed-
-ward Roehrig? -A- Yes, Sir.

Q- Did you see Roehrig after they carried him in to the
office?  -A- I don't remember whether I saw him after
they carried him in there. I was talking to him but
don't remember anything he told me. - He never spoke
to the boy after he got the shock.

Q- Did the deceased ever regain consciousness? -A- Not to
my knowledge.

William Schaeffer testified; that he was working
at the Murphy Iron Works on August 24th., 1918. His busin
-ess was that of helper.

Q- Will you tell us what happened as briefly as you can?
-A- I was bucking up stave bolts or holding on them.
This man the deceased was holding on rivets on the
end of the Crystalizer. I got a shock and it knocked
the bar out of my hand and I kind of staggered back
and ran around to tell the men in the tank that it
was charged and when I got out I looked back and I
saw the deceased falling and we ran and picked him
up and put him in some iron. I went and tried to
give him some water, he could'nt drink. The boss said,
Whats the matter? and I answered, I don't know. We
then brought him into the office. I don't know whether
he was living or dead. I had him by the head, laid him
down, walked out, he did'nt seem to move, but I don't
know whether he was dead or not. I never went back to
the office again.

The cross examination did not, in our opinion
in any manner weaken the main statements of this witness,

The contention of the defendant as stated
at the outset was, that plaintiff had not made his case
certain, and it was not the duty of the defendant to call

418

witnesses or to do ought, because no case having been
made out there was nothing for the defendant to answer.
We are of the opinion that the Judge a quo properly
ruled out the Certificate of the Coroner which was only
produced as rem ipsam. . There was no inquest and nothing
else developed save and **except** what has been set forth
here.The Workmens Compensation acts covers this case.

It has often been held: " Where a case hings on
the credibility of witnesses the findings of the
trial judge on this question will not be disturbed."
The Judge a quo, able, inteligent, learned in the law,
long on the bench saw and heard the witnesses. He was of
the opinion that plaintiff had fully made out his case
and we concur in that opinon.

For the reasons assigned in this opinion the
the judgment of the lower court is affirmed.

Judgment Affirmed.

_Testimony of the witness Griffin, in our opinion is a corroboration of the other witness_